Curia, per Wardlaw, J.
The report of what occurred on the circuit, states that the grounds of appeal set forth in the suggestion, were the' mental incapacity of the testator, and undue influence exercised over him “ by other persons, especially his widow, and his sons, Henry and Albert, his principal legatees and devisees;” — and that the only ground urged m the argument of counsel was, the undue influence of the widow upon the testator, when he was aged, dull and feeble. In this court, the executors have urged only their last ground of appeal, and the chief effort of those *189 who oppose the will, here the appellees, has been to uphold the verdict, as the conclusion drawn from the testimony that representation of the country, whose province it is to judge of facts.
This Court feels, and often shews by its decisions, how absolutely necessary it is, in general, where there has been no misdirection, to sustain verdicts upon. facts, even against strong impressions to the contrary, which reports of the testimony may produce. In one case there has been conflict of testimony — many witnesses on one side, all fair upon paper, may have been disbelieved, and slight testimony on the other side, from the character and manner of a witness, or circumstances which attended the trial, and fell within the observation of the jury, may have justly acquired force, which cannot be here appreciated. In another case, where there has been no conflict of testimony, an inference of fact, seemingly rash, may have been drawn,. or one seemingly strong may have been rejected; but there is no standard for the sufficiency of evidence to induce belief, and the various degrees of more and less, must, ordinarily, be left to the unprejudiced consideration of.the jury. The great delays and expense of new trials, the temptations which they hold out for trickery and perjury, after the full exposure of the case has shewn the weak and the strong points on either side, and the unfitness of this Court for the vain attempt to discover and correct all errors of fact committed by juries, all urge strongly the propriety of usually adopting the verdict as a final re7 sponse to every question which was involved in the issues submitted to the jury.
But a power, lodged somewhere, to grant new trials upon facts in proper cases, is an essential element in the theory of jury-trial in civil cases; without which, a jury, soon sinking into the multitude from which it was drawn, might become more irresponsibly tyrannical than a single Judge could be, if his decisions were subject to no appeal. Sometimes juries err, not in judging of the facts, but in applying the facts as they find them to the law — either misapprehending the law, or refusing to administer it. They, no less than Judges, are bound to follow the law — but if they, in truth, have not done so, still their general verdict is presumed to have been rendered with due understanding and observance of their duty, and thus, a ; result which was reached by their making law different from that which they received from the bench, is ascribed to their finding facts different from those which were supposed to exist. On particular subjects, this tendency of juries to usurp legislative power, arises from prejudices general in the community, and in nothing has it been more strongly exhibited to the view of the Court, than in setting *190 aside such wills of old persons, as have defeated the seem-jng]y just claims of some worthy expectants.
The right to make a will, is especially valuable to the old and infirm. Their thoughts dwell most upon posthumous arrangements, and in this right, they have the' means not only of gratifying their feelings, but of securing substantial advantages whilst they live. Just in proportion to the circumstances which raise the value of the right in any particular instance, is usually, however, the danger on the one hand of that being produced for a will which is not the will of the testator, and on the other hand, of his wishes legally-expressed being defeated. To guard against the former, statutes have prescribed for the execution of a will, peculiar formalities, in addition to the requisites of capacity and assent, which, by the common law, must attend every valid instrument; the latter is the risk of frustration by design or accident, to which all human schemes are liable, and is not, in its nature, a fit subject for many special preventives; but is diminished by whatever tends to secure the adduction of the will before a proper tribunal, and the just decision there of the conflict between its supporter and its opponents. As conformity to statutory requisites is exacted in the execution of a will, to a degree which occasionally sacrifices the-earnest desires of a testator, and the plainest merit of his legatees to the preservation of valuable general rules, so where the execution has been clearly established, strictness should be exercised in examining evidence which may be adduced to rebut the inference of validity that arises from the execution. This inference is the presumption which the common law raises from every solemn act, confirmed in the case of a will by the evidence which is given by the subscribing witnesses whom the statutes require. When the execution has been marked by circumstances of fair dealing, and the subscribing witnesses have been above suspicion, fully aware of their duty, and competent to perform it, an imputation of incapacity in the testator should be sustained by strong testimony of facts, which shew a defect of mind existing m a form that the subscribing witnesses may not have detected; and an allegation of undue influence should be proved, so that the judges of fact, having proper conceptions of what undue influence is, may perceive by whom and in what way it has been exerted. On such subjects, witnesses are often multiplied to a vexatious number, and by them opinions are vaguely expressed, for which reasons ridiculously insufficient are sometimes given; but however difficult a mass of testimony and a protracted trial may make the discovery and separation of the really important matters that are in evidence, it is only by carefully separating and weighing these, that judicial truth can be conscientiously attained.
*191 The right to make a will, is the right to make it according to the testator’s pleasure — -judiciously or capriciously — justly or unjustly — at absolute discretion, subject only to the restraints upon the power of disposition which the law has imposed. If the will is the expression of the testator’s wishes lawfully made, the opinions of other persons, however they may condemn its motives or disapprove its scheme, cannot, in any way, rightfully controul his power to do with his own as he pleases, without impairing one of the incidents which give to every man’s property its value. The claims of wife and children, like those of friends and dependents, are, by the law, left to the protection of natural feelings only; any or all of them may be disinherited by will, save only the wife’s dower, and certain shares which, by statute, are guarded against excessive preference for a mistress or illegitimate progeny. When a deserving and-affectionate child has been left destitute, and wealth has been heaped upon another, that, by unworthy means, gained the favour of a wrongheaded parent, the consolation of those who administer the law is, that a right is preserved which is valuable, however liable it may be to occasional abuse, and that under it, rewards may, in other cases, be bestowed according to merit. What ,is meritorious in the eyes of one man, is hateful to another — each, in giving his own, must be allowed to judge for himself.
In the question of admitting a paper to probate as a will, the provisions made by the paper are unimportant, if it appears to be a will — that is, a testamentary paper properly executed by a person of sufficient capacity, exercising volition. If the paper has these requisites, no matter how it may disappoint just expectations, how unequal it may be, how it may depart from previous intimations of purpose, it is the testator’s will, and the law allows it to prevail. .Great mistakes would probably be committed by any one, who should undertake to decide from previous acquaintance with the aged father of a large family, how he would desire his property to be divided after his death. The modes of thinking in different men as to the relative claims of widow, sons, daughters and grandchildren, and as to the relative values of various kinds of property, are so opposite; - the circumstances of children are often so diverse as to family, connexions, property, habits and success, — that apart from differences in character, manners and conduct in the several claimants, and from feelings likely to be concealed in the bosom of the father, allowance would have to be made for many considerations besides equal affection for all, and the special ad vance-ments which had. been made to each. On the subject of their wills, most men are studiously secret, and those who speak much, seldom speak candidly and consistently. A *192 declaration of one’s wishes and intentions, repeated again anq agajn; if not written and executed as the law requires, has no force as a will. With like reason, no number nor solemnity of declarations can prevail against the written will properly executed. When the will has been proved, opposing declarations show only that the true intention was not expressed in them, or that it was changed.
If an act has been extorted by force or obtained by fraud, or induced by artful misrepresentations: — or if exhausted patience has yielded to great importunity for the sake of peace, or weakness has been cajoled by excessive and artful flattery, or fear has sought security in concessions to threats or to malevolent indications of the power to mischief: — or if over a feeble mind which, if left to itself, might be competent for ordinary affairs, a general dominion has been established, so controlling as to prevent its free agency, and the act has been subject to this influence; in none of these cases is a paper purporting to be a will valid, nor is any other act valid, for in none of them does the act proceed from the volition of the agent. Some or all of these cases make up what is usually comprehended under the term undue influence, so familiarly in use with us. It is not influence merely, but undue influence, that is always alleged — something, excessive and unlawful. It is not the influence of friendship or affection that can be complained of; nor the influence of argument or entreaty, nor the impression made by kindness or prudence, nor even the effect wrought by servile compliance or mean endurance of wrong. It must be something which destroys free agency. Motives of almost every conceivable kind may be offered, and if the mind of the agent, free to reject or adopt the motives, yields its assent, the act is the act of the agent.
In examining questions of undue influence concerning a will, as in questions of capacity, the contents of the paper and previ-. ous indications of purpose made by the supposed testator, may, as evidence, be brought into the investigation; but they can come in only as evidence pertinent to the inquiry, — Is this his will? and should not be suffered to minister to any prejudice opposed to the license of testamentary disposition which the law allows. It is no condition of this license, that the provisions of a will should be such as to please a jury. If the paper was properly executed, and the testator was of competent sanity, and no undue influence has been established, it is the testator’s will, and no tribunal is appointed on earth to inquire whether it ought to have been his will. For a jury to proceed to that inquiry, or (which is the same thing) to decide against a will because they do not like its provisions, is a fraud upon the law, a violation of *193 their sworn duty, and an usurpation which would never be tolerated if it were not concealed.
In the case before us, two sons and two grand children, the children of a deceased daughter, all of the first marriage, seek to set aside the will, and urge that it is too favourable to the second wife and her children. The youngest of twelve children is considerably over twenty one years of age. The widow was, for forty years, the wedded partner of the testator’s fortunes. By the will, she receives for herself, (according to the best calculation that can be made from the evidence) not more than one-third of what she would take under the statute of distributions, if the will were set aside. Her two youngest sons, the executors, by the will, take, perhaps, a little more than twice as much as they would get if it were set aside. She and they, together, take nearly the same amount under the will, as they would get under the statute. The two grand children would gain by the setting aside of the will — the widow would gain — the executors would lose; — whether any change would be made as to the remaining nine children, (of whom, two of the first marriage, and four of the second, are made residuary legatees in equal shares, and three, to wit — two of the first marriage and one of the second, are declared to have been fully advanced) would depend upon the advancements which might be established against the three sons, James K., Samuel and William, who are declared to have been fully advanced, when they came into hotchpot. As to James K. whose claims have been most dwelt upon, if the deed for his land had been made by the sheriff to his father, and then by his father to him, instead of being made by the sheriff to him after the payment of the money by his father, the land would clearly have been an advancement, and would probably have, of itself, exceeded an equal share under the statute; unless it should be made to appear that this benefit, conferred in 1821, was in payment of services that were continued until 1827, notwithstanding it was spoken of as a gift by the father. As to Samuel, it is known that, besides the expenditures upon his education, he received a plantation and a negro, of value not shown; and in conversations which testator held about a negro for James K. and about the one thousand dollars given in lieu thereof, he seems to have considered a plantation and a negro as the measure of the bounty which he intended for each of his sons. William also received a plantation and one negro, with cash and other articles, amounting, in the whole, to about four thousand dollars; and that sum is acknowledged, on both sides, to exceed one full share. There cannot, in this state of the evidence, be any fair inference that the testator had an inadequate comprehension of the sufficiency of the advancements made to these three sons to *194 constitute the- equality which, from parol evidence, it has been assumed he desired to prevail. If, irr conscience, he might not have regarded the land as- an advancement to James K. it no where appears that- he did not so regard it, nor that- his doing so was so absurd as to be evidence of fatuity. If his conversations, abiding in the memory of witnesses, who formed low estimates of his understanding, must controul his solemn declaration of purpose, they are not moré explicit on any point than on this, that James K. and Samuel were to get no more. Whether in contemplating impartial divisions between -his children, he actually looked to the state of his property as éach one left the family, or to its final condition, is by no means plain; and which he should have done, admits of various opinions. The provision for his two orphan grand children is said to be small. Their mother was partially advanced; what he considered their claims upon him to be, or what expectations -of provision for them from other quarters he indulged, we know not-. He spoke of giving money to them, and money is- given to them by the will. If it is his will, it may be ungenerous; But there is- no power to amend it, and no right to set if aside for dissatisfaction with its provisions.- Only to show that they are not so extraordinary as to furnish evidence of incapacity or undue influence, have the provisions of the will been here noticed. If the verdict, has been a good natured effort to benefit the grand children, under a belief that only small deductions from the other members of the family would be thus required, the serious litigation’ and considerable changes’ as' to the shares of the widow and executors which must follow, whatever may be the result as to the other nine children, show that the effort was kindness to some at the great cost of others. But courts are not organized to dispense favours. If there was a case where the setting aside of a will would have only the effect of making up a share for a child whom the testator had with shameful injustice cut off, by exacting equal contributions from others who were all equally bound in conscience to contribute — to set aside, for this purpose, and against the consent of any of the favoured children, what was proved to be the testator’s will, would be unlawful and unjust, inconsistent with the rights of parlies, and the duty of jurors. With how much less propriety could a departure from the law to accomplish a purpose of fanciful justice be indulged in the case before us? Sufficient capacity of the testator, at the date of the will, is, if not admitted by every witness, shown by the testimony to have been, in effect and conduct acknowledged by every one, who speaks of transactions and conversations that occurred about that time or soon afterwards. The codicil, made when the capacity was more feeble, contains a mere statement of facts, not- one of which *195 is denied, and is important only as between the residuary legatees. The strongest evidence tending to show incapacity, ^ is found in the petulance, garrulity, complaints and weeping, that were probably increased by want of employment in old age, but seem to have been observed at least nine years before the will was made; and the most striking occasion when these were noticed afterwards, was when a large advancement was made to a daughter of the first marriage. The direct evidence as to the influence of the wife, exhibits only instances not more numerous, nor stronger than by careful scrutiny might be discovered in every family, where a prudent wife enjoys the deserved confidence of her husband. As to the executors, the exposure of family affairs which (as is usual in such cases) has here taken place, shows conduct on their part, which, unexplained, is discreditable; but which was calculated to avert, rather than attract favour to them, unless we imagine a case of harsh tyrauuy exercised over a father, afraid even to complain, which is wholly inconsistent with the general purport of the testimony. Some jealousies and bickerings probably existed in the family; watchfulness and anxiety about the property, which, by some, would be considered indedcate, appear to have been indicated at various times; but there seems to be no reason for supposing that any member of the family, in relation to the will, conceived any fraudulent purpose or practiced any unfair conduct. The testator went alone to the office of a lawyer of undoubted probity; there his will was drawn and executed, and there again his codicil; the subscribing witnesses were all of the highest respectability, and the testator often spoke of the will, and adverted especially to the clause concerning the three sons, which is now most complained of. To set aside what he has thus solemnly done and repeatedly recognized, upon the ground of undue influence, would seem to be deciding by some other rule than the law and the evidence which hav *. been given in the case.
The motion is, therefoi e, granted, and a new trial is ordered.
Evans, Frost and Withers, JJ. concurred.

Motion granted.